UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

WINDY LUCIUS,

    Plaintiff,

v.

GAMESTOP, INC.,

    Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

Windy Lucius, ("Plaintiff") by and through her undersigned counsel, hereby files this complaint and sues Defendant, GAMESTOP, INC., a foreign for-profit corporation doing business in Florida, and alleges as follows:

**INTRODUCTION**

1. Plaintiff Windy Lucius brings this action individually against GAMESTOP, INC., ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (hereinafter, "ADA").

2. Plaintiff is blind. She uses the internet to help her navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide her a window into the world that she would not otherwise have. She brings this action against Defendant for offering and maintaining a mobile application (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. The mobile application ("app") at issue is available through the Apple "app store" for download and installation on Apple devices. (hereinafter,

"app").  Defendant developed the app and made it available to millions of phone and tablet users in the Apple app store.

3. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their websites/apps are in compliance with the ADA.

4. Defendant offers its app to the general public from which it sells video games and electronics. Defendant's apps allow mobile device users to shop on a mobile platform through a connection to Wi-Fi or cellular data so that users can make purchases, locate stores, and explore product offerings on the go.  As such, it has subjected itself to the ADA because Defendant's app is offered as a tool to promote, advertise and sell its products from its brick and mortar stores, which are places of public accommodation. As a result, the app must interact with Defendant's stores and the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

5. Blind and visually impaired consumers must use the assistive technology on the iPhone to access app content. The app must be designed and programmed to work with the assistive technology available on the iPhone.  Defendant's app, however, contains digital barriers which limit the ability of blind and visually impaired consumers to access it, even with Apple's assistive technology.

6. Defendant's app does not properly interact with Apple's assistive technology in a manner that will allow the blind and visually impaired to enjoy the app, nor does it provide other means to accommodate the blind and visually impaired.

7. Plaintiff has downloaded and attempted to patronize Defendant's app in the past and intends to continue to make further attempts to patronize Defendant's app. Like the seeing community, she would like to be able to pre-shop Defendant's merchandise and learn about sales or discounts before going to Defendant's brick and mortar location. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's app, Plaintiff will continue to be denied full and equal access to the app as described and will be deterred from fully using Defendant's app or shopping at the physical locations.

8. Plaintiff continues to attempt to utilize the app and/or plans to continue to attempt to utilize the app in the near future. In the alternative, Plaintiff intends to monitor the app in the near future, as a tester, to ascertain whether it has been updated to interact properly with screen reader software.

9. Plaintiff is continuously aware of the violations on Defendant's app and is aware that it would be a futile gesture to attempt to utilize the app as long as those violations exist unless she is willing to suffer additional discrimination.

10. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's app. By continuing to operate its app with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions at Defendant's app, and knowing that it would be a futile gesture to attempt to utilize the app unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily

available to the general public and is deterred and discouraged from doing so. By maintaining an app with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

11. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

12. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this app as described above. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to access the app to avail herself of the benefits, advantages, goods and services therein, and/or to assure herself that this app is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the app without fear of discrimination.

13. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. The ADA provides, in part:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

14. Therefore, Plaintiff seeks a declaration that Defendant's app violates federal law as described and an injunction requiring Defendant to modify its app so that it is fully accessible to, and independently usable by, blind or visually impaired individuals. Plaintiff further requests that the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the requirements of the ADA and to ensure that Defendant

4

has adopted and is following an institutional policy that will, in fact, cause Defendant's app to remain in compliance with the law.

## JURISDICTION AND VENUE

15. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

16. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district where it has multiple physical locations.

17. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial district in which Defendant resides, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

18. This Court has personal jurisdiction over GAMESTOP, INC. pursuant to, *inter alia*, Florida's long arm statute F.S. § 48.193, in that Defendant: (a) operates, conducts, engages in, and/or carries on a business or business ventures (s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida; (c) was and/or is engaged in substantial and not isolated activity within Florida; and/or (d) has purposely availed itself of Florida's laws, services and/or benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida.

## PARTIES

19. Plaintiff, Windy Lucius, is and, at all times relevant hereto, was a resident of the State of Florida and Miami-Dade County. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

20. Defendant GAMESTOP, INC., owns, operates and maintains multiple stores called

GAMESTOP, within the Southern District of Florida, either through franchisees, affiliates, partners or other entities. Defendant's store sells electronics and video games to the public. Defendant also offers those items to the public through its app. Defendant's store and accompanying app work collectively and are public accommodations pursuant to 42 U.S.C. § 12181(7)(E).

## FACTS

21.  Defendant owns, operates and controls an app from which it sells video games. They sell those same goods from their corresponding brick and mortar stores. Defendant's app also helps users locate stores, view pricing and specials, shop, and a variety of other functions.

22.  Defendant's app is a nexus to a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). Therefore, under the ADA, Defendant must ensure that individuals with disabilities have access to full and equal enjoyment of the goods and services offered on its app.

23.  Blind and visually impaired individuals may access apps by using accessibility features in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a visually impaired person may independently use the internet. Unless the app is designed to be accessed with screen reader software, visually impaired individuals are unable to fully access app and the information, products, and services available through the app.

24.  The international app standards organization, W3C, has published WCAG 2.1 A and WCAG 2.1 AA (Version 2.0 of the Web Content Accessibility Guidelines). WCAG 2.1 A and WCAG 2.1 AA provide widely accepted guidelines for making apps accessible to individuals with disabilities and compatible with screen reader software. These guidelines have been endorsed by the United States Department of Justice and numerous U.S. District Courts.

25. Plaintiff is legally blind and uses VoiceOver screen reader software (hereinafter, "Plaintiff's software") in order to access app content. Plaintiff's software is the most popular screen reader software utilized worldwide by visually impaired individuals for Apple tablets and phones.

26. Despite attempts, Defendant's app did not integrate with Plaintiff's software, nor was there any function within the app to permit access for visually impaired individuals through other means. Her shopping attempts were rendered futile because the app was inaccessible. Therefore, Plaintiff was denied the full use and enjoyment of the goods and services available on Defendant's app as a result of access barriers on the app. For example, the game titles do not have accessible labels. There is no way for a VoiceOver user to hear what games are available for purchase or rent. Additionally, ads and ad content are not announced.

27. Defendant's app does not meet the WCAG 2.1 A level of accessibility. As to WCAG guideline 1.1.1 – Non-Text Content, text alternatives for non-text content should be provided. Here, the main screen slider contains multiple promotional images that are not labeled. Instead of hearing a label of each image, VoiceOver users only hear "VW pre-order." As to WCAG guideline 1.3.1 – Info and Relationships, information, structure, and relationships conveyed through presentation should be programmatically determined or be available in text. Here, the Shop page shows an image of each game along with the game title, gaming system, price, and review rating, but none of this is accessible to VoiceOver users. The first 20 games were each announced with placeholder text instead of the actual values. For example, instead of hearing the "Ghost of Tsushima" image, title, game system, price, reviews, etc., users hear: "LBL Sell Product, LBL Sell Title, LBL Sell Price." As to WCAG guideline 2.4.3 – Focus Order, the app should provide focus in a logical order that preserves meaning and operability. Here, once a user opens the main menu (icon showing three bars) then they find that they cannot move back to the main

screen. Focus only moves between the five menu items and no "back" element is available. As to WCAG guideline 2.5.3 – Labels in Name, any component that has text or images of text must have an accessible name shown in visible text. Here, the Shop screen has more than 13,000 results. There are three 'sort' buttons at the top of the page to help with sorting but all three are not labeled which prevents VoiceOver users from searching and filtering.  As to WCAG guideline 4.1.2 – Name, Role, Value, all elements should be built for accessibility. Here, the carousel on the main screen has 7 slides but VoiceOver users are unable to navigate to any other slides.

28. Defendant's app does not meet the WCAG 2.1 AA level of accessibility. As to WCAG guideline 1.4.5 – Images of Text, the app should not use images of text (screen readers are unable to read). Here, the 20% off ad contains text, pricing and images but it is not announced to VoiceOver users.

29. By failing to adequately design and program its app to accurately and sufficiently integrate with VoiceOver, Defendant has discriminated against Plaintiff and others with visual impairments on the basis of a disability by denying them full and equal enjoyment of the app, in violation of 42 U.S.C. § 12182(a) and C.F.R. § 36.201.

30. As a result of Defendant's discrimination, Plaintiff was unable to use Defendant's app and suffered an injury in fact including loss of dignity, mental anguish and other tangible injuries.

31. The barriers on the app have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's app.

32. If Defendant's app were accessible, Plaintiff could independently research, review and purchase videogames from Defendant's stores online, as well as utilize the other functions on the app.

33. Plaintiff believes that although Defendant may have centralized policies regarding the maintenance and operation of its app, Defendant has never had a plan or policy that is reasonable calculated to make its app fully accessible to, and independently usable by, people with visual impairments.

34. Without injunctive relief, Plaintiff and other visually impaired individuals will continue to be unable to independently use Defendant's app in violation of their rights under the ADA.

## SUBSTANTIVE VIOLATION

### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

35. The allegations contained in the previous paragraphs are incorporated by reference.

36. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment the goods, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

37. Defendant's stores and accompanying app are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(E).

38. Under Section 302(b)(2) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

39. Under Section 302(b)(2) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

40. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii) (iii); see also 28 C.F.R. § 36.303(a).

41. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations set forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

42. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is legally blind and has a disability that substantially limits the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's app. Plaintiff has not been afforded the goods, services, privileges and advantages that are provided to other patrons

who are not disabled, and/or has been provided goods, services, privileges and advantages that are inferior to those provided to non-disabled persons. These violations are ongoing as Defendant has failed to make any prompt and equitable changes to its app and policies in order to remedy its discriminatory conduct.

43. Pursuant to 42 U.S.C. 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff, on behalf of herself and on behalf of others similarly situated requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its app is fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to brings its app into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its app is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: September 30, 2020

                Respectfully submitted,

                */s/ J. Courtney Cunningham*
                J. Courtney Cunningham, Esq.
                J. COURTNEY CUNNINGHAM, PLLC
                FBN: 628166
                8950 SW 74TH Court, Suite 2201
                Miami, FL 33156
                T: 305-351-2014
                cc@cunninghampllc.com